## BENSON *v.* ELA.

In an action against a deputy sheriff for neglecting to levy an execution, evidence that the party in interest, having authority to control the execution and direct the levy, delivered to the defendant a bond of indemnity against liability on account of levying, and also ten dollars, as his fees for making it; which were received by the defendant without objection; and at the same time requested the defendant to levy on certain designated property, is competent to be submitted to the jury as evidence of the fact that the execution was placed in the hands of the defendant for service. When the bond and money were delivered to the defendant, he was informed that the property on which it was to be levied, was certain machinery in a mill, near the dwelling-house of the creditor, but at the distance of some miles from the dwelling of the defendant, and that if he would call at the house of the creditor when he came to make the levy, the particular articles on which it was to be made would be pointed out to him. — *Held*, that this was a sufficient designation of the property, unless it should be made to appear that the defendant called at the house of the creditor for the purpose of having a more specific designation, and the creditor failed to make it.

Benson *v.* Ela.

A witness testified upon the trial that he did not know whether he was interested in the suit or not; that he owned the note on which the execution was founded; that the suit on the note was brought by his direction in the plaintiff's name as indorsee, with his consent, against the principal alone, one M. being surety upon it; that the witness had agreed with M. that he might manage the suit upon the note, and the judgment and execution which might be recovered therein, in his own way, as the witness looked to M. alone for his pay, and was sure of it from him; that M. had taken the direction and control of the suit on the note, and of the execution which issued therein; had instituted this suit in the plaintiff's name by the consent of the witness, and had agreed to conduct it at his own expense. — *Held*, that upon these facts the witness had no interest to exclude him from testifying for the plaintiff.

The creditor of a late copartnership, who declares against the surviving partner, as upon a debt contracted by him solely, and not against him as such survivor, is not entitled to have his execution levied upon the property which belonged to the partnership, and came to the debtor by reason of his survivorship, in preference to other creditors whose debts were contracted by him solely, and who have earlier attachments; and a creditor of the survivor for a debt contracted by him solely, having declared against his debtor as surviving partner, and as upon a joint debt of himself and his late partner, and obtained judgment thereon, is entitled to such preference in the same manner as if his debt had been contracted by the partnership. As to the different classes of creditors having conflicting claims to the property under their respective attachments, and as between them and the officer levying the execution, the judgments are to be considered conclusive.

The property of the partnership remains, subject to the preference of the partnership creditors, notwithstanding the survivor may have managed and treated it as his own, with the assent of the administrator of the deceased partner, and may have contracted debts upon the credit of the property.

CASE against the defendant, a deputy of the sheriff of the county of Grafton, for not levying an execution, and for a false return of *nulla bona* thereon.

The declaration sets forth that the plaintiff recovered judgment against James Briggs and John Andrew, copartners, under the firm of James Briggs & Brother, surviving partners of John Briggs and Joshua Briggs, formerly partners under the firm of James Briggs & Brothers; that an execution issued thereon, which was delivered to the defendant on the 14th of June, 1852, and ten dollars paid to him as fees for service thereof, and that the plaintiff requested him to levy the same upon certain machinery

in the brick mill in Holderness, formerly occupied by the execution debtors ; that the plaintiff then tendered and paid said ten dollars to the defendant, as such fees, and delivered to him a bond in the penal sum of $500, conditioned to indemnify him for levying, and designated the said chattels to the defendant, and offered to go with him and point out the same to him, that he might levy the execution ; that said chattels were then, and long after, free from any legal attachment; that they were the property of the execution debtors, and that the defendant might have levied and satisfied said execution thereon. The declaration then avers that the defendant neglected and refused to make said levy, and returned the execution with a false return thereon, that he could find no property of the execution debtors but what was previously attached, and returned on other writs then pending against them.

Plea, the general issue.

Upon the trial, James P. F. Smith and George G. Hoit testified that on the 14th of June, 1852, one John M. Merrill delivered to the defendant, at his house in Meredith, where he resided, a bond, signed by Merrill, Thomas Eastman, and Andrew Baker, dated June 10, 1852, conditioned to indemnify the defendant for levying the execution on said machinery, and also ten dollars in money, and at the same time requested him to levy an execution in favor of Benson against the Briggs', on some machinery in their mill in Holderness. The witness, Hoit, testified that he did not remember distinctly that any articles were specified, but he understood Merrill to speak of machinery in the brick mill. The witness, Smith, testified that Merrill requested the defendant to levy on the machinery in the mill; that carding-machines and a shearer were spoken of, and other kinds of machinery that the witness did not remember, and both of these witnesses testified that ten dollars were paid to the defendant, as his fees for levying the execution, and were received by him, together with the bond, without objection, and that Merrill requested him to come to Holderness, where Merrill lived, within a few rods of the mill, and stated to him that he would point out the

property on which he wished the levy made. Neither of the witnesses was able to state whether any execution was then delivered to the defendant or not.

The defendant objected, that these facts were not sufficient to be submitted to the jury, as evidence that the defendant had the execution in his hands for service, nor that there was such designation of the property as to render him liable for not levying. But the court ruled that the evidence was sufficient upon both points.

To prove that Merrill had authority to direct the levy, the plaintiff introduced Hiram Cross as a witness, who, being interrogated by the defendant as to his interest, testified that he did not know whether he was interested in the suit or not; that Briggs & Brothers gave him a note with the names of Merrill and one Smith thereon, as their sureties; that the action, Benson against Briggs & Brothers, was brought upon this note, by his direction, in Benson's name as indorsee, in pursuance of an agreement between Benson and himself, that he might use Benson's name in any way that might be necessary for collecting the note; that the witness owned the note at the time the suit was brought upon it, and that the debt was still due to him, but that he looked to Merrill for his pay; that he had told Merrill, as he was interested in having the note collected out of Briggs & Brothers' property, he might manage the suit and the execution as he thought proper — taking such course as he thought best for the collection of the debt; that he gave up all control of the suit to Merrill, and took no interest in it, as he was sure of his pay from him; that it was understood between them that Merrill was to pay all costs from the beginning; that he had nothing to do with this suit, it being brought by Merrill's direction, though he had consented to its being brought in Benson's name.

The defendant objected, that the witness was interested, and that, there being no other evidence upon the point, Merrill had no authority to require the defendant to proceed and make the levy. The court held that the witness, upon the facts stated, had no interest in the suit, and that those facts, in connection

with the receipt of the bond and fees by the defendant, without objection, were sufficient evidence of Merrill's authority.

It appeared in evidence that the machinery was originally owned by the firm of Briggs & Brothers, of which firm Joshua, John and James Briggs, and John Andrew, were the members, and was used by them in said mill, in the prosecution of their copartnership business as manufacturers. Joshua Briggs died on the first day of October, 1846, and John Briggs in February, 1848. After the death of each, the surviving partners continued the business as copartners — the three survivors under the firm name of James Briggs & Brothers, and the two under that of James Briggs & Brother. The machinery was used by the successive copartnerships in their business, until October, 1851, when the firm of James Briggs & Brother failed in business, and it was attached upon the following writs : One in favor of Johnson & Dale, dated October 18, 1851, on which the attachment was made on the same day ; one in favor of David Shaw, with a return thereon of an attachment of the machinery on the 20th of said October, subject to the attachments of Johnson & Dale, and of the plaintiff in this action ; and one in favor of the plaintiff, Benson, with a return of the attachment on the same 20th of October, subject to Johnson & Dale's attachment. In Johnson & Dale's writ, the defendants, James Briggs and John Andrew, are set out as copartners under the firm of James Briggs & Brother, and the indebtedness is alleged against them as such copartners, and not as surviving partners of either of the preceding partnerships. In Shaw's, they are set out as surviving partners of the second firm, of which the defendants and John Briggs were members, and in Benson's as surviving partners of the original firm, of which the defendants and Joshua & John Briggs were members, and alleging an indebtedness of those respective firms. The count in Benson's suit is for money had and received ; and under this count, upon receiving judgment, the plaintiff filed the note referred to by Cross in his testimony, dated October 10, 1846, signed "James Briggs & Brothers," " O. Smith," "J. M. Merrill," payable to Cross or order, and by him indorsed in

blank, and the judgment was entered up for the amount of the note. In the action, Johnson & Dale against the defendants, judgment was rendered at the February term, 1854, in favor of the plaintiffs, and Shaw's action was entered at the November term, 1851, continued until the November term, 1852, and then dismissed from the docket, it having been settled by the parties a short time previous to that term. The judgments recovered in Johnson & Dale's and in Benson's suits, and the executions which issued upon them, described and set forth the judgment debtors and their partnership relations, as in the respective writs on which the judgments are founded.

The defendant took the positions at the trial that there was no competent evidence of a debt due to the plaintiff from the original firm, and that from the date of the note upon which his action was founded, it appeared not to be the debt of that firm, and that the machinery, at the time of the request to levy the plaintiff's execution thereon, and from that time until the return day of the execution, was under attachments having priority to the plaintiff's. The court ruled otherwise, and the defendant excepted.

The defendant offered to prove that a portion of the debt rendered in the judgments in favor of Johnson & Dale, was in fact contracted by the original firm prior to the death of Joshua Briggs; that at the respective deaths of Joshua and John Briggs, their administrators made investigation into the affairs of the copartnerships, and found them insolvent; that they did not include any interest which the intestates had in said firms in their inventories of the estates of the deceased partners; that said administrators consented to the surviving partners using the partnership property, including the machinery, as their own; that the survivors, with the knowledge of the administrators, held themselves out as owners, without objection or interference, and contracted debts and were trusted on the credit of the property.

The court rejected the evidence offered, as irrelevant and immaterial to the issue.

A verdict was taken, by consent, for the plaintiff.

The defendant contended that the verdict should be for nominal damages only. The court directed the verdicts to be taken for one half of the amount of the judgment in favor of Benson *v.* Briggs & Brothers, with interest thereon ; it being agreed by the parties that if, in the opinion of the court, there is evidence in the case upon the points therein raised, to warrant a verdict upon those points in favor of the plaintiff, the amount of damages should be ascertained by a commissioner appointed for that purpose ; the assessment of the damages to be made in accordance with the principles which shall be established by the court as the law of the case, and the verdict being amended accordingly, that judgment shall be rendered thereon.

*H. A. Bellows*, for the defendant.

There was no evidence of such designation of the property as to render the defendant liable. The evidence tends only to show that he was requested to levy on certain machinery in a mill, where there was a large quantity, designating only carding machines and shearers, and there were several of each kind, and some clearly not subject to levy.

There was no competent evidence of a debt against the original firm. The judgment is not evidence against the defendant, who represents creditors of the new firm, and could hold the property for them against the plaintiff, unless he is shown to be a creditor of the old firm. The defendant does not stand merely as a wrong-doer, but as representing one of the two classes of creditors between whom the controversy exists. The evidence shows that the debt of the plaintiff was against the second firm, and not the first, if it proves any debt at all. The judgment does not prove the existence of the debt against the old firm, as against the defendant or creditors of the new firm, who attached. The defendant and those creditors are strangers to the judgment, and therefore not bound by it. 2 Stark. Ev. 190 ; 1 Greenl. Ev. 528 ; 1 Phill. Ev. 326 ; *Thrasher* v. *Haines*, 2 N. H. 444 ; *Brewster* v. *West*, Id. 190 ; *King* v. *Chase*, 15 N. H. 9.

Benson *v.* Ela.

The ordinary case of a fraudulent conveyance is in point. If impeached by a creditor he must show a debt subsisting, and for that purpose it is not certain that his judgment is even *primâ facie* evidence.

If the defendant is bound by the judgment, the creditor would also be bound ; for, upon his bringing suit against the defendant, he might relieve himself by introducing the same proof. If the plaintiff claims to hold the property of the second firm, we answer, he has no judgment against that firm. His execution is only against property of the first firm, and the defendant was requested to levy on property of that firm only. The bond of indemnity is to protect him from liability for taking the property of the first firm only, and there was no pointing out property of the second firm.

Again, on the proof offered, the plaintiff had no preference over the creditors of the new firm, as it went to show the assets of the old firm delivered over to the new, and they allowed to hold themselves out as the owners, and to obtain a credit thereby. Story on Part., secs. 401–3 ; *Ex parte Williams,* 11 Vesey 5, and notes ; *Ex parte Buffum,* 6 Vesey 19, 29, and notes.

*James Bell,* for the plaintiff.

SAWYER, J. The claim of the plaintiff in this case is for damages against the defendant, a deputy sheriff, for neglecting to levy an execution recovered by the plaintiff against James Briggs and John Andrew, as surviving partners of Joshua and John Briggs, upon property claimed by the plaintiff to have belonged to the firm of James Briggs & Brothers, of which the four were members.

The property in question originally belonged to that firm as partnership property.

Upon the death of one of the members of a partnership, the title to the partnership property vests in the survivors, and the debts and liabilities of the partnership survive against the surviving members, as their proper personal debts and liabilities.

The creditors of the partnership are entitled to a preference in the application of the partnership funds over the creditors of the individual members; and this right of the partnership creditors to priority does not rest upon the ground that the members of the debtor firm have a lien among themselves upon the estate belonging to the partnership, for the payment of the debts; but the claim is one which the law recognizes as appertaining to the creditor himself, and which may be asserted by him as his legal right. *Ferson* v. *Munroe*, 1 Foster 462 ; *Jarvis & al.* v. *Brooks & al.*, 3 Foster 136. In the case of *Jarvis & al.* v. *Brooks & al.*, it was decided that a corresponding preference is given by law to the separate creditors of a member of the firm, as to his private property, over the claims of the partnership creditors to his separate estate. The credit given to the partnership upon which the joint debt arose is considered as having contributed to augment the partnership funds, and that, given to the individual member, upon which the separate debt arose, as having added to his separate estate. Substantial justice consequently requires that the partnership creditor, whose funds have thus been added to the partnership property, should have the right, in the first instance, to receive payment out of the partnership property, in preference to the creditors of the individual member ; and, conversely, that the creditors of the partner whose separate estate has been augmented by the credit given to him personally, should first be paid out of his separate estate, in preference to any of the partnership creditors.

The grounds upon which these principles are held applicable to the cases of the conflicting claims of creditors of a partnership, and of one of its members, equally exist in the case of such conflict of claims between the respective creditors of two firms, one of which succeeds by survivorship to the right of property and liabilities of the other. The partnership property of the original firm is none the less subject to the lien of the creditors of that firm, because, by the consent and agreement of the survivors, it is held by them as the property of a new partnership which they have formed among themselves, as the successors of

Benson *v.* Ela.

the old. Whatever may be the number of such successive partnerships, the property in the hands of the last survivor is held by him as survivor of the several firms, and all that is necessary, in order to enable the different classes of partnership creditors to enforce their priority in the case of conflicting attachments among themselves, or between them and the creditors of the survivor, for his several debt, is, that the property can be traced through the successive partnerships to the hands of the judgment debtor, as survivor of them all. The attachment or seizure upon execution, by a creditor of a preceding firm, founded upon his debt against that firm, of property which belonged to it, vacates all proceedings by way of attachment or seizure of the same property in favor of creditors of a succeeding firm, or of the survivor, so far as to secure to the creditor of the first firm his priority, unless those proceedings have been consummated by a sale of the property, and an application of the avails to the satisfaction of the subsequent debt. When property which belonged to the earlier firm, or its avails, are held by attachment at the suit of a creditor of the succeeding firm, or of the survivor, for his separate debt, it is the right of the creditor of the earlier firm to interpose an attachment, and thus secure his legal priority, or to place his execution, founded upon a debt against the earlier firm, in the hands of the officer, and require him to apply the property upon that, in preference to an execution founded upon a debt against the succeeding firm, or the survivor, regardless of the order of the attachments. If any doubt exists whether the property belonged to the earlier firm, or is held by the succeeding or by the survivor, under some other title than merely by right of survivorship, the officer is at liberty to demand indemnity before he can be required to make the application. No creditor of either class can subject him to liability for not making the application upon his debt, unless he furnish indemnity, if re-required, against the claims of other creditors. Having the right thus to be indemnified, the officer must decide upon the conflicting claims of the creditors at his peril.

Before proceeding to apply these principles to the present

case, several preliminary questions require consideration.   These relate to the authority of Merrill, the party in interest, and his proceedings, in presenting the execution to the defendant and requiring the levy.   They involve the inquiry whether those proceedings were sufficient to render it the duty of the defendant to proceed with the levy, provided the plaintiff had the right, upon legal principles, to the priority which he claims.   .

It was contended by the defendant at the trial, that there was no competent evidence that the plaintiff's execution was in the hands of the defendant at the time Merrill directed the levy. This objection has not been insisted upon in the argument, but we may not, perhaps, consider it as waived.   We think there was competent evidence to be submitted to the jury upon that point in the proceedings which took place between Merrill and the defendant, as testified to by Smith and Hoit.   The receipt by the defendant of the ten dollars as fees for levying, and of the bond to indemnify, containing the recital that the defendant had been requested to receive and serve the execution, and the want of any suggestion by the defendant at the time that the execution was not in his possession, tend to show that he had it in his possession, or under his control, and were sufficient to warrant the jury in finding that it had been put into his hands to be served.

Another objection taken at the trial was, that there was no evidence of a proper designation of the property on which to make the levy.   The evidence showed that the defendant, residing in Meredith, at the distance of some miles from the mill in Holderness, where the property was situated, was requested by Merrill to come to his house in Holderness, which was but a few rods distant from the mill, and was told that he would point out to the defendant the particular articles on which he wished the levy made.   It was necessary for the defendant, in order to make the levy, to go to the mill.   Having accepted the money offered to him for this service, it was his duty, in reference to this point, to proceed and make the levy, unless, when he arrived at the mill, he should be at a loss to know upon what property

to levy, by reason of Merrill's failing to designate it. It was sufficient, until he went to the mill with a view to make the levy and gave Merrill opportunity to designate the property, that he was informed generally where and what it was, without a more specific designation.

Another objection was, that there was no competent evidence of the authority of Merrill to direct the levy. The testimony of Hiram Cross, if competent, clearly proved such authority; but this was objected to as incompetent, on the ground of his interest in the suit. His answers purge him of all such interest. The suit was not brought for him, nor by his direction. He would have no control over the judgment, if one should be recovered by the plaintiff, nor any right to the avails of it. The alleged neglect of the defendant, on which the action is founded, did not arise upon any proceedings of his, nor upon any duty owing from the defendant to him. In the request to levy the execution, and in all the subsequent proceedings in instituting and prosecuting this action, Merrill was acting in his own behalf and for his own interest, and the witness would in no other sense gain or lose by the event of the suit than that one of his debtors, Merrill, might in the end be found to have more or less funds at command to pay the debt, according as he may or not succeed in recovering damages in this suit in Benson's name.

Besides, it is too late for the defendant to make the objection that Merrill had no authority to direct the levy, after receiving from him the execution for service, with the bond of indemnity and fees, without at the time making any question of his authority.

If, then, in June, 1852, when Merrill requested the defendant to levy the execution upon the machinery in the mill, and informed him that upon his coming to make the levy he would point out to him the specific property upon which to make it, there was in fact any property in the mill upon which the plaintiff might legally require his execution to be levied, the defendant neglected his duty in this behalf, and for any damages resulting from that neglect the party in interest, having the right to prosecute in the name of Benson, is entitled to recover.

At that time the property was under three attachments: viz. 1. Upon the writ in favor of Johnson & Dale, sued out on the 18th of October, 1851, and the attachment made on the same day; 2d, upon the writ in favor of the plaintiff, sued out on the same day, and the attachment made on the 20th; and, 3d, upon the writ in favor of David Shaw, on which the attachment was made on the 20th, subject to the plaintiff's. The plaintiff obtained judgment in his suit on the 24th of May, 1852, and execution issued thereon on the 26th, returnable at the November term, 1852. The two other actions were pending in court until the November term, 1852, and consequently were pending in June, 1852, when the defendant was required to make the levy, and from that time until the return day of the execution. The question then is, whether the property attached was held in June, 1852, and from that time forward, under the attachment upon either of the writs, one in favor of Johnson & Dale, the other in favor of Shaw, in preference to that under the plaintiff's. In the order of time, the plaintiff's attachment was prior to that of Shaw, and subsequent to that of Johnson & Dale. If the three suits had proceeded for the recovery of debts contracted by the same firm, it is clear that of Johnson & Dale would have been entitled to the preference. The declaration in the plaintiff's writ proceeds against the survivors, James Briggs and John Andrew, as defendants for a debt alleged in the writ to have been contracted by the original firm, counting upon that indebtedness against them as survivors of that firm, and the judgment and execution, following the declaration, so describe them. In Shaw's writ the declaration is laid against the same defendants, as survivors of the second firm, and for a debt alleged to have been contracted by that firm; while in Johnson & Dale's the declaration proceeds against them, not as survivors of either of those firms, nor for a debt alleged to have been contracted by either, but as then copartners under the third firm, and for a debt alleged in the writ to have been contracted by them in that capacity. The property attached, originally belonging to the partnership composed of the four members, upon the death of

Joshua Briggs came to the hands of the three survivors, subject to the right which the creditors of that partnership had to secure their debts upon it in preference to debts contracted by the three survivors. The lien of those creditors was not lost by the death of Joshua Briggs, nor by the formation of the new partnership among the survivors, and the devotion of the property by them to the purposes of that partnership. In any conflict of claims to the property, by attachment, between the creditors of the old firm and of the new, they would stand in this respect upon the same ground as if the conflicting claims had arisen before the death of Joshua, between creditors of the partnership and those of individual members. The debts of the new partnership would be merely the joint debts of three of the four members of the old firm. So, too, upon the death of John Briggs and the forming of the third partnership by the two survivors, the lien of the creditors of the original firm remained unimpaired, while at the same time the additional lien which attached upon forming the intermediate partnership, in favor of its creditors as against the creditors of its individual members, still continued, entitling them to preference over the creditors of the latest firm.

At the time of the attachments, then, in October, 1851, and from that time until after the request made by the plaintiff to the defendant to levy his execution, the property belonged to the judgment debtors, James Briggs and John Andrew, as surviving partners of the first and second firms, and it was also held by them as partnership property of the third firm, then existing. As such, it was subject in their hands to the claims of creditors of the original firm, as the paramount lien ; to those of the intermediate firm, as subordinate to that, but superior to the rights of creditors of the then existing firm, and to those of the existing firm in preference to the creditors of individual members ; and the question arises, how is it to be determined to which of the classes the three several attaching creditors in this case belonged ? Is it to be decided in each case upon the allegations of the writ and the indebtedness therein set forth, as the foundation of the suit ? Or is the question for the jury upon

evidence which may control those allegations, and show, however it may appear in the writ and by the judgment and execution, that in fact the debt upon which they are founded was contracted by another firm than that set forth ?

This is not a question whether the judgment is or not, in reference to this point, conclusive upon the officer or the other creditors, according as it may be found upon legal principles that they are or are not parties or privy to it. It may be conceded that they are strangers to it, and therefore not bound by it as a judgment. Nevertheless, we think that considerations of great weight lead to the conclusion that, as between the judgment creditor, and others making claim to the property under their respective attachments, and as between them and the officer, they are to be considered as standing upon the same ground, in reference to this point, as though they were privy to the judgment, and therefore bound by it.

When the plaintiff, in a suit commenced by writ of attachment, declares against the defendant upon his sole promise, alleging the indebtedness upon which he counts as incurred by him alone, without setting it out as incurred by him jointly with his former partner, whom he has survived, we think he should be estopped thereby to claim, for the purpose of acquiring a lien to property under his attachment to which he would otherwise have no right, that the indebtedness upon which the action is founded was incurred in fact by the partnership. If the promise be such that he may declare upon it as joint or several, having elected in his declaration in which form to proceed, it must be understood that he has made his election with reference to the advantage, if any, to be secured by the attachment, either of the partnership property or of the private property of the partner. When he declares against the survivor as the sole promissor, he must be understood to do so because the indebtedness upon which he counts was contracted by the defendant solely and not jointly, with his former partner ; and he proceeds in this form with a view to secure and perfect his lien upon the property of his debtor in his own right, and to obtain his priority over the

claims of those who are creditors for debts contracted by him jointly with his late partner. On the other hand, if the declaration sets forth the promise as made by the defendant jointly with his late partner, whom he has survived, this must be because the indebtedness was incurred by the firm, and the object is to enforce the lien upon the property of the firm. In both cases the allegations of the writ, in reference to the nature of the promise, whether joint or several, are material, and, under the proper pleadings, must be proved as laid ; and the plaintiff in the action in either case may properly be held to be estopped to claim that his judgment is founded upon a debt other than such as is shown by his declaration, for the purpose of giving him a priority in levying his execution upon property to which the priority does not attach, in virtue of the indebtedness alleged in the writ. In this view, Johnson & Dale having declared against James Briggs and John Andrew as copartners under the existing firm, and not as survivors of either of the earlier partnerships, alleging an indebtedness of the existing partnership alone, is not at liberty to prove, *aliunde,* that the judgment and execution issuing thereon are in fact founded upon a debt contracted by the earlier partnership, contrary to the allegations of his writ, for the purpose of setting up a lien upon property to which, according to those allegations, he is not entitled. And if the plaintiff in the action is thus estopped, other parties, plaintiffs in actions in which the property is also attached, should in like manner be estopped to deny that a judgment founded upon a debt, which, according to the allegations of the writ, entitles it to priority, is not in fact founded upon such debt. According to the practice in our courts, any party, having an interest by reason of his attachment in property upon which another may claim a prior lien in his suit, has the right, on application to the court, to be admitted to defend the suit in which such priority may be claimed, for the purpose of defeating it. Upon being admitted to defend, he may defeat the suit by proof, under the proper pleadings, that the promise upon which the plaintiff counts was made by other parties than those set forth, or drive

him to such an amendment of his declaration as will have the effect to vacate the attachment or defeat the priority claimed under it. If he neglects to apply to the court for leave to make the defence, he may properly be held to have waived the advantage which he might thereby have secured. In the institution of a suit, and prosecuting it to judgment, the proceedings are attended with so much of publicity and notoriety that it may consistently be assumed that all persons, claiming liens which may be defeated by reason of the priority to which the debt declared on in the suit is entitled, have opportunity to make themselves parties to the proceedings. In proceedings which operate *in rem*, notice to all interested, and an opportunity to appear and assert their rights, are always presumed ; and this presumption lies at the foundation of the doctrine that judgments *in rem* are conclusive upon all persons. As to the priority to which the judgment is entitled by reason of the character of the debt on which it is founded, the judgment may be considered as being in the nature of one *in rem*. The debt when it is passed into judgment becomes merged in it, and the priority which attaches to the debt follows as one of the legal consequences of the judgment, binding the property, in the application of it to the payment of debts, to the preference to which the debt is entitled. In this view the judgment, in its effect and operation upon the property, is strictly in the nature of a proceeding *in rem*. Stark. on Ev., part 1, sec. 73. But whether so regarded or not, the judgment must be held conclusive upon the point that the priority to which it is entitled is such as belonged to the debt, which is shown by the record to be the debt on which it is founded ; for this priority belongs to it as one of the legal consequences of the judgment. To prove the fact itself, that the judgment has been rendered and the legal consequences of such a judgment, the record of the judgment is the only competent evidence, and of them it is evidence against the world. Stark. on Ev., part 2, secs. 57, 58. Any mode of determining the priority, other than by looking to the debt, as described in the judgment and the record, would be productive of much diffi-

culty and embarrassment to the officer and all the parties in levying their respective executions. If the parties are at liberty to show that the debts were not contracted by the persons alleged upon the record, probably in every case where a conflict of claims might arise there would be no other practicable method for determining the priority, but by suits against the officer for a misapplication of the property. If there is to be a controversy on this point, the convenience of all would seem to be promoted by holding that it should be had while the suits are pending to which the property is to be applied, and in those suits, instead of opening the matter for controversy among the creditors, after the rendition of the judgments in those suits, by the institution of new suits against the officer for the sole purpose of determining the questions of priority which might have been readily determined upon proper grounds in the original suits.

Neither Johnson & Dale, then, nor Shaw, are at liberty to prove that the plaintiff's judgment is not in fact founded upon such a debt as is alleged in the writ. If they are thus estopped, it is clear that the defendant in this action, representing them as he does in this contest for the property, is also estopped. In answer to the claim of the plaintiff to the priority, he sets up their alleged superior right, and in maintaining their right he can not take ground which they would not be permitted to assume.

As to the different classes of creditors making claims to the property, and as to the officer levying upon it, the judgments must be regarded as conclusive in this respect. The plaintiff's debt is shown by the judgment to have been contracted by the original firm, and was thus entitled to the preference in the application of the property.

It is clear that the right thus to be preferred was not lost or impaired by the facts offered to be proved in connection with the management of the property subsequently to the death of Joshua Briggs, and the proceedings of the administrators of Joshua and John in relation to it. In all cases the property of a partner-

ship in the hands of the survivors, after its dissolution by the death of one of the partners, is to be managed by the survivors as their own, and if the survivors in this case obtained credit upon the partnership property, it was, as in every such case, upon their own property and not in virtue of any consent of the administrator. The administrator of the partner deceased has no right to intermeddle with it, or with any of the partnership concerns. If, upon the adjustment of all the partnership affairs by the survivors, a surplus remains in their hands to the credit of the deceased partner's share in the concern, he has the right to demand and receive this surplus, and this is the extent of his right to intermeddle with the partnership affairs. But while the partnership property remains in the hands of the survivors, the lien which is given by the law to the creditors of the partnership in preference to the claims of creditors of the survivors individually, can in no way be affected by the mode in which it is managed among themselves, or by any transactions between them and the administrator which do not amount to an alienation or transfer of the title. The evidence in relation to these matters was properly rejected. The rulings of the court below upon all the points involved in the inquiry, whether the plaintiff is entitled to recover, being sustained, there must be judgment for the plaintiff for such damages as may be determined in the mode provided by the case. Those damages should be the amount of the judgment and interest thereon, if upon further investigation it shall be found that the property in the mill in June, 1852, to which the plaintiff's priority attached, and upon which the execution might have been levied, was sufficient to have satisfied the judgment upon a levy and sale of the property, after deducting the probable expenses of the levy and sale; if less than sufficient for that purpose, then the damages should be the value of the property, as it would have been shown to be upon a sale in June, 1852, deducting therefrom the probable expenses of the levy and sale, and interest thereon from the return day of the execution.